**Cargitlada v. Binks Manufacturing Co.**

*Richard C. Senker,* for plaintiff.

*Richard H. Maurer,* for defendant Illinois Tool Works Inc.

JONES II, *J.,* May 26, 2004—

## BACKGROUND

The above-captioned matter was a products liability case stemming from an incident on May 6, 1997, in which the safety on a paint sprayer became disengaged while plaintiff was painting a commercial building, causing the spray gun to inject paint into his left middle finger. Said finger ultimately had to be amputated. At the conclusion of a jury trial on June 20, 2001, plaintiff was awarded $150,000. However, on August 17, 2001, defendant Binks Sames entered bankruptcy. On September 10, 2001, plaintiff sought to amend the caption of his April 23, 1999 complaint to add Illinois Tool Works (ITW) as a defendant, along with initially-named defendants Binks Manufacturing Company and Binks Sames Corporation.[1] Plaintiff did so, on the alleged basis that several years prior, counsel for Binks Manufacturing/Binks Sames answered an allegation in plaintiff's complaint stating in pertinent part that each defendant was "now known as

---

1. Counsel for ITW asserted that he never received a copy of plaintiff's petition to correct caption and was therefore unable to oppose the same. See motion of Illinois Tool Works to strike judgment, ¶22.

ITW Industrial Finishing." After reviewing plaintiff's submissions, the motion to amend was granted on the basis that he was merely *correcting* the name of the party against whom judgment was had. The caption was accordingly amended to read: *"Sergio Cargitlada v. Binks Manufacturing Company a/k/a ITW Industrial Finishing and Binks Sames Corporation."* Although ITW was apparently not notified of the amendment, they learned of the same via subsequent execution proceedings involving one of their distributors in Montgomery County, Pennsylvania, thereby prompting ITW to file a motion to strike judgment. It was *after ITW became involved in the matter* that this court was made aware of the nature of the misstatement contained in Binks/Binks Sames' original answer to plaintiff's complaint. Upon realizing this misstatement in their original answer, counsel for defendants Binks/Binks Sames had prepared and served an *amended* answer upon plaintiff, which clearly stated that *"part of the assets* of Binks Sames Inc. *were purchased by ITW Industrial Furnishing* [sic]," *and* that *"the whole liability claims of Binks Sames Inc., have been assumed by Sames Inc."* See motion of Illinois Tool Works to open judgment, exhibit E, ¶4. (emphasis added) Said amended answer, although served upon plaintiff, was ultimately rejected by the prothonotary because counsel for defendants never obtained leave of court to file the same.[2] However, in the motion to amend origi-

---

2. Nor did counsel seek leave of court to do so after it was rejected by the prothonotary, as counsel believed the document which he had labeled as an "amendment" to his original answer, was in fact only "informational," to put plaintiff's counsel on notice that he had sued the improper party. Again, counsel for plaintiff did not dispute the fact that he received this information, or that he was in fact, put on notice.

nally brought before this court by plaintiff, he acknowledged receiving an amended answer from defendant Binks, but failed to reference the pertinent language of said amendment. Instead, plaintiff summarized said amended answer for this court as follows:

"Defendant subsequently filed a document entitled 'Defendant's [sic] amended answer to complaint' which only replies to paragraphs 2, 3 and 4 of the complaint. Those allegations admit the corporate identity of the defendants *but is [sic] silent regarding ITW Industrial Finishing.* However, defendants failed to obtain permission from plaintiff or leave of court to file said 'amended' pleading pursuant to Pa.R.C.P. 1033. Therefore, said 'amended' pleading is a nullity. *Catanese v. Taormina [and Scirica],* [437 Pa. 519, 523,] 263 A.2d 372, 374 (1970)." See plaintiff's motion to amend caption, ¶5 n.3. (emphasis added)

A review of said amended answer as provided by ITW in their subsequently-filed motion to strike, clearly demonstrated that defendant was not "silent" regarding ITW Industrial Finishing, as plaintiff so contended in his previously-filed motion to amend.

Plaintiff responded to ITW's petition to strike and in view of the foregoing, this court granted the same November 25, 2002. Plaintiff appealed. On November 25, 2003, this court's order was reversed by the honorable Superior Court and the matter was remanded so that this court could re-assess ITW's petition as one to open—as opposed to strike—judgment. In view of the Superior Court's decision, ITW re-filed their petition as one to open judgment. On March 23, 2004, this court granted

said petition for the reasons set forth herein. The instant appeal followed.

## DISCUSSION

Preliminarily, a distinction must be made between an ordinary default judgment and the circumstances involved in this particular case. In this case, ITW was not made a party to plaintiff's lawsuit until after trial, as opposed to having knowledge of it during the initial pleading stage. As such, they technically did not "default." However, this court is of the opinion that ITW's petition to open judgment is subject to the following standard:

"A petition to open a default judgment is an appeal to the equitable powers of the court. The decision to grant or deny a petition to open a default judgment is within the sound discretion of the trial court, and [the appellate court] will not overturn that decision 'absent a manifest abuse of discretion or error of law.' . . .

"[The appellate court] may, after a review of the case, find an abuse of discretion if equity clearly favored opening the judgment. . . . 'An abuse of discretion is not a mere error of judgment, but if in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will, as shown by the evidence or the record, discretion is abused.' . . .

"Generally speaking, a default judgment may be opened if the moving party has (1) promptly filed a petition to open the default judgment, (2) pleaded a meritorious defense to the allegations contained in the complaint, and (3) provided a reasonable excuse or explana-

tion for failing to file a responsive pleading." *Seeger v. First Union National Bank,* 836 A.2d 163, 165 (Pa. Super. 2003). (citations omitted)

There is no dispute that ITW promptly filed their initial petition to strike. ITW learned of the judgment against it on May 20, 2002, and filed its petition to strike on June 13, 2002. Moreover, although ITW was not directed to file a petition to open judgment for this court's consideration in light of the appellate court's opinion, ITW did so on January 20, 2004. In his response to said motion, plaintiff did not contest the fact that ITW acted promptly.

With regard to the second requirement, the fact that ITW was not one in the same company as Binks *for purposes of liability* clearly constituted a meritorious defense to the allegations contained in plaintiff's complaint. Inasmuch as ITW did not assume Binks Sames Corporation's liabilities when they purchased some of their product lines in August of 1998 (the details of which will be further discussed hereinbelow), plaintiff's proposed amendment to the caption would have had the effect of adding a new party completely out of time. It is well-settled that:

"Although Pa.R.C.P. 1033 permits amendments to the caption at any time, changes effected subsequent to the running of the statute of limitations are restricted to minor rectifications, not substitution of parties. . . . Where the proposed change has the effect of adding a new party, it should be prohibited. We held that, '[i]f the proper party was sued but under the wrong designation, the correction will be allowed. *However, where the wrong party was sued and the amendment is designed to substitute*

*another, distinct party, it will be disallowed.* Important in this determination is whether different assets will be subject to liability by allowing the amendment.' . . . The imposition of liability on a new and distinct party after the statute of limitations has run is the result to be avoided." *Fredericks v. Sophocles,* 831 A.2d 147, 150 (Pa. Super. 2003). (citations omitted) (emphasis added)

Again, the fact that ITW was improperly added as a new party to the suit after the statute of limitations had run, was a wholly meritorious defense to plaintiff's claims.

With regard to the third and final prong enumerated hereinabove, ITW was never a named party to the underlying suit and could therefore not file a responsive pleading to a lawsuit they were unaware of. This conclusion is based upon ITW's representations to this court that they did not share counsel with Binks Sames and therefore had no way of knowing about the lawsuit. See motion of Illinois Tool Works to open judgment, exhibit O-2, pp. 7-8.

Accordingly, ITW satisfied the third prong of the standard set forth hereinabove.

In its petition to open judgment, ITW asserted that the underlying reasons for this court's decision to grant the previous motion to strike remained valid for purposes of granting their subsequently-filed petition to open judgment. In response, plaintiff conceded that:

"The *'sole justification'* for amending the caption was Mr. Cohen's statements in his answer and new matter to the complaint, in paragraphs 2, 3 and 4, that ' . . . at the present time Binks is now known as ITW Industrial Fin-

ishing.'" See plaintiff's brief contra Illinois Tool Works' motion to open judgment, p. 2. (emphasis added)

When deciding ITW's initially-filed motion to strike, it was brought to this court's attention that Attorney Cohen: (1) did not represent ITW at the time he provided the "misstatement" in Binks' answer to plaintiff's complaint; (2) had not been retained by ITW; (3) had not been paid by ITW; and (4) did not communicate in any manner with ITW about any phase of this matter. In support of these facts, ITW provided this court with the affidavit of Gerald J. Cohen, Esq., which reiterated the same. See motion of Illinois Tool Works to strike judgment, exhibit C; motion of Illinois Tool Works to open judgment, exhibit C. Attorney Cohen's deposition testimony of July 19, 2002, further reiterated the facts set forth above.[3] Plaintiff did not dispute these facts. Therefore, inasmuch as plaintiff's "sole justification" for amendment of the caption had been clearly negated by evidence provided by ITW, there existed no justification for allowing the judgment at issue to stand against ITW.

Also contained in plaintiff's response to ITW's petition to open judgment was his interpretation of ITW's "buyout" of Binks Sames. In support of the same, plain-

---

3. In his deposition testimony, Attorney Cohen was asked who he was retained to represent in the Philadelphia action, to which he responded "The manufacturer of the Binks gun which was designated Binks Manufacturing Company and Binks Sames." Additionally, when asked if he was retained by ITW, Mr. Cohen responded "Never." Mr. Cohen was then asked if he ever worked for ITW, to which he similarly responded "Never." Finally, Mr. Cohen was asked if he had ever spoken with an employee of ITW, to which he again responded, "Never." See motion of Illinois Tool Works to open judgment, exhibit O-2, pp. 7-8.

tiff provided an extensive discussion, including exhibits from Binks' website, which he claimed demonstrated that ITW and Binks were one in the same. However, plaintiff made absolutely no mention of the document which controls here: the "Agreement of purchase of sale of assets and stock" between Binks Sames Corporation and ITW. In view of said agreement, the website references upon which plaintiff relied were wholly irrelevant. Moreover, ITW correctly pointed out in their reply to plaintiff's response, that "plaintiff's counsel asserts a successor liability theory he did not plead or prove at trial." See reply brief of Illinois Tool Works Inc. in support of motion to open judgment, p. 1.

In assessing this matter, it is important to note that plaintiff's injury occurred on May 6, 1997—1 1/4 years *prior* to ITW's acquisition of various Binks Sames' product lines. Plaintiff's claim against Binks Sames was resolved via jury verdict on June 20, 2001. Therefore, if ITW contracted with Binks Sames to *not* assume liabilities such as the instant one, judgment could not have been had against them via an amendment to the caption of plaintiff's complaint. The following excerpt from the "Agreement of purchase of sale of assets and stock" between Binks Sames Corporation and ITW is dispositive of the issue:

"1.5 Assumption of liabilities

"1.5.1 Subject to the terms and conditions set forth herein, at the closing, *the purchaser shall assume and agree to pay, honor and discharge when due all of the following liabilities existing at or arising on or after the closing date* (collectively, the 'assumed liabilities'):

"1.5.1.1 Any and all liabilities, obligations and commitments relating to the Binks business that are (i) reflected on the financial statements (as defined in section 3.5); (ii) incurred or arising under any of the employment security agreements and the stay bonus agreements listed on schedule 3.22 hereto; (iii) incurred after the date of the financial statements in the ordinary course of business consistent with prior practice and in accordance with the terms of this agreement; (iv) *liabilities related to product liability claims arising out of the products sold after the closing date . . . .*" See motion of Illinois Tool Works to open judgment, exhibit C-1. (emphasis added)

Clearly, the spray gun which caused plaintiff's injury was sold *prior* to the agreement closing date of September 30, 1998, as said injury occurred on May 6, 1997. Therefore, ITW *did not* assume this particular liability when they acquired portions of Binks Sames' business. In view of this, as well as the fact that plaintiff did not raise, plead or prove a successor liability theory, this court's decision to grant ITW's petition to open judgment was wholly proper.

In addition to the discussion involving plaintiff's counsel's website-based interpretation of ITW's buy-out of Binks Sames Corporation, counsel for plaintiff raised an equity argument in his response. First, he claimed that Attorney Cohen's representations to him regarding Binks now being "known as ITW Industrial Finishing" were assumed to be correct and truthful and should therefore be deemed an admission of fact. However, plaintiff failed to acknowledge two things: (1) he waited until years after receiving this information to amend his caption in

accordance therewith; and (2) he received subsequent information from Attorney Cohen which negated his earlier statement upon which plaintiff relied, yet plaintiff chose to disregard these facts and seek amendment anyway, without providing this court with such pertinent information.

In further support of his equity argument, plaintiff stated that "it is unfair to permit ITW to reap the benefits of owning the Binks product line and at the same time, disavow a debt incurred because of a defective item in the Binks product line." See plaintiff's brief contra Illinois Tool Works' motion to open judgment, p. 8. This argument must fail, as a valid contract exists between Binks Sames Corporation and ITW, in which Binks agreed to assume liability related to product liability claims arising out of the products sold prior to September 30, 1998. The fact that Binks declared bankruptcy three years after selling out to ITW has absolutely no bearing upon the agreement that was reached between Binks and ITW on August 31, 1998 (effective, September 30, 1998). Plaintiff claimed that ITW "wanted (and still wants) all of the benefits of owing [sic] the Binks product line without any of the expenses. We therefore submit that ITW does not come into this argument with clean hands." See plaintiff's brief contra Illinois Tool Works' motion to open judgment, p. 12. Aside from not being an accurate assessment of the contract between Binks and ITW,[4] ITW cannot be accused of having "un-

4. Review of the "Assumption of liabilities" portion of the contract between Binks and ITW clearly demonstrates that ITW was willing to assume Binks' liability under numerous circumstances. However, the circumstances surrounding Mr. Cargitlada's incident were specifically excluded.

clean hands" simply because they rightfully dispute a liability that is not theirs. Although unfortunate for plaintiff, this cannot be deemed a basis for imposing liability upon ITW—even under considerations of equity. To do so would serve as a complete inequity to ITW under the circumstances and facts involved herein.

Moreover, plaintiff cannot fault ITW for his mistake . . .

"[I]t is the duty of the party asserting a cause of action to use all reasonable diligence to properly inform himself of the facts and circumstances upon which the right of recovery is based and to institute suit within the prescribed period." *Fredericks v. Sophocles,* 831 A.2d 147, 151 (Pa. Super. 2003) (citations omitted)

In this case, plaintiff was injured on May 6, 1997. He filed his complaint on April 23, 1999. On September 29, 1999, defendant Binks filed their answer to plaintiff's complaint, wherein Attorney Cohen mistakenly identified ITW as being the same entity as Binks Sames Inc. However, *less than one month later,* plaintiff learned of Attorney Cohen's mistake and was informed of the true nature of ITW's involvement with the Binks Sames Corporation, via defendant Binks' amended answer, which was filed on October 20, 1999. Therefore, plaintiff knew in October of 1999 that for purposes of the liability involved herein, ITW was not the same entity as defendant Binks Sames. Trial commenced and a verdict was reached in June of 2001. However, it was not until after defendant Binks Sames entered bankruptcy on August 17, 2001, that plaintiff decided to petition this court for amendment, pursuant to *incorrect* information contained in defendant's *original* answer filed two years earlier and

regardless of the corrected information plaintiff received shortly after that time. Under these circumstances, plaintiff's allegation that *ITW* "does not come into this argument with clean hands," is clearly unfounded.

Finally, plaintiff argued that equity mandated relief, because "Pennsylvania's product liability law is the result of our courts' attempt to fashion an equitable remedy for victims of products that are unsafe for their intended use. . . ." See plaintiff's brief contra Illinois Tool Works' motion to open judgment, p. 13. This is true. However, the remedy here is not properly obtained from ITW—it is properly obtained from Binks Sames Corporation. Plaintiff may not conveniently choose the "deep pockets" from which he wishes to recover; there must be a lawful basis for the same. In this case, the legal contract between Binks and ITW prevented plaintiff from recovering judgment against Binks from ITW; regardless of which company might have been in a better position to pay at any particular time.

In view of the foregoing, this court properly granted ITW's petition to open judgment.

## CONCLUSION

For the reasons set forth herein, this court's order of March 24, 2004, granting ITW's petition to open judgment, should be affirmed.